WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Keith Goss,<br><br>    Plaintiff,<br><br>v.<br><br>Lynette Bonner, et al.,<br><br>    Defendants. | No. CV-18-08295-PCT-SMB<br><br>**ORDER** |

Pending before the Court are three motions. The seven individual Defendants filed a Motion to Dismiss in the Coconino County Superior Court before this action was removed to this Court, (Doc. 32);[1] Defendant United States then filed a Motion to Dismiss in this Court (Doc. 12); and Plaintiff then filed a Motion to Strike Substitution by USA/Scope Certification (Doc. 16). All three motions have been fully briefed and the Court elects to resolve the motions without oral argument. *See* L.R. Civ 7.2(f).

## BACKGROUND

Plaintiff Keith Goss is a podiatrist who previously worked for Tuba City Regional Health Care Corporation ("TCRHCC"), which is owned by the Navajo Nation and is operated under the Indian Self-Determination and Education Assistance Act ("ISDEAA"), Pub. L. 93-638, 88 Stat. 2203.[2] Plaintiff filed this action on February 9, 2018, in Coconino

---

[1] This motion originally appeared on the docket as Doc. 1-2 at 210. Pursuant to a notice of pending motions (Doc. 31), the Clerk of Court refiled the motion on the federal docket as Doc. 32; the Response, originally appearing as Doc. 1-2 at 194, was refiled as Doc. 33; and the Reply, originally appearing as Doc. 1-2 at 232, was refiled as Doc. 34.

[2] Under the ISDEAA, "[a] tribe receiving a particular service from the [Bureau of Indian Affairs ("BIA")] may submit a contract proposal to the BIA to take over the program and

County Superior Court (the "Superior Court"). (Doc. 1-2 at 33). In response to a motion to dismiss, the Superior Court dismissed the action and gave Plaintiff an opportunity to amend the complaint. (Doc. 1-2 at 62) (Doc. 1-2 at 110). Plaintiff filed an amended complaint (the "FAC") in the Superior Court on August 17, 2018. (Doc 1-2 at 176). The FAC brings individual counts of defamation against Lynette Bonar, Zane Kelley, Steven Holve, Joe Magee, Kathryn Magee, Jennifer Whitehair, and Jayson Watabe (the "Individual Defendants").[3] Plaintiff alleges that beginning around March 1, 2017 and continuing throughout June, he became aware of statements made by each of the Individual Defendants to people outside of official workplace proceedings. He alleges that the statements were published to people and impeached his honesty, integrity, or reputation. He also alleges that the Individual Defendants knew that the statements were false. In addition to the Defamation Counts, Plaintiff also brings a count pursuant to 18 U.S.C. § 2520 against Jayson Watabe, alleging that Watabe recorded and subsequently used a recording of a private conversation. In the alternative, Plaintiff brings a *Bivens* claim for violation of right to privacy.[4]

On September 4, 2018, the Individual Defendants again moved to dismiss all counts pursuant to Rule 12(b)(1), (2), and (6). (Doc. 32). That motion remains pending. On October 19, 2018, the United States concurrently removed this action from the Superior Court to this Court and filed a "Notice of Substitution," substituting the United States for the Individual Defendants in each of the seven defamation claims pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the "Westfall Act," 28 U.S.C. § 2679. (Doc. 1) (Doc. 4) (the "Scope Certification"). The Director of the Torts Branch, Civil Division, United States Department of Justice, acting on behalf of the Attorney General, certified that the Individual Defendants "were covered

---

operate it as a contractor and receive the money that the BIA would have otherwise spent on the program." *Shirk v. U.S. ex rel. Dep't of Interior*, 773 F.3d 999, 1002 (9th Cir. 2014) (internal quotation marks and citation omitted).
[3] The defamation counts are numbered in the FAC as counts two, four, five, six, seven, eight, and nine (the "Defamation Counts"). There is no count numbered "three" in the FAC.
[4] These two counts are numbered in the FAC as "Count One" and "Alternate Count One."

persons acting within the scope of their deemed federal employment as employees of the Indian Health Service in carrying out functions authorized under the Self-Governance Compact with TCRHCC at the time of the incidents giving rise to suit."[5] (Doc. 4-1 at 2–3). The United States then brought a motion to dismiss the Defamation Counts pursuant to Rule 12(b)(1). (Doc. 12).

**DISCUSSION**

**I.     Motion to Strike Substitution by USA/Scope Certification**

The Court will first address Plaintiff's Motion to Strike Substitution by USA/Scope Certification. (Doc. 16). The United States filed a Response, (Doc. 22), as did the Individual Defendants jointly through counsel, (Doc. 23). Plaintiff has also filed a Reply to the Responses. (Doc. 24).

While a challenge to the Attorney General's Certification is often raised by a plaintiff in response to a motion to dismiss, *see, e.g.*, *Meridian Int'l Logistics, Inc. v. United States*, 939 F.2d 740, 742 (9th Cir. 1991) (raising a certification challenge in response to a motion to dismiss), Plaintiff here has chosen to attack the Scope Certification in a separate motion. Both the United States and Individual Defendants challenge the procedural posture of Plaintiff's motion, arguing that it fails under Rule 12(f). (Doc. 22 at 2) (Doc. 23 at 2). While Plaintiff has styled his motion as a "motion to strike," it is clear from the content of the motion that Plaintiff is raising a challenge to the Scope Certification. The Court therefore construes this motion as a challenge to the Scope Certification, and not as a motion to strike under Rule 12(f). Because Plaintiff's Response to the United States' Motion to Dismiss also incorporates an attack against the Scope Certification, the Court will also consider arguments raised by Plaintiff in his Response (Doc. 21).

**A.** *The Westfall Act*

When a federal employee is sued for a wrongful or negligent act, the Westfall Act "authorizes the Attorney General to certify that a United States employee was acting within

---
[5] Pursuant to 28 C.F.R. § 15.4, a Director of the Torts Branch, Civil Division, Department of Justice, is authorized to issue the certification.

the scope of his employment at the time of an incident which gives rise to a civil claim." *Meridian*, 939 F.2d at 743 (citing 28 U.S.C. § 2679(d)(1)-(2)). Such certification has the following effect: "Upon certification, the employee is dismissed from the action and the United States is substituted as defendant." *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 420 (1995). Once certification is given in a civil action, federal law also mandates that if the case is pending in state court, it must be removed to federal court. 28 U.S.C. § 2679(d)(2). The action then proceeds under the Federal Tort Claims Act ("FTCA"). *Gutierrez*, 515 U.S. at 420. However, "[b]ecause the government has not waived its sovereign immunity under the . . . FTCA . . . for claims arising out of libel or slander," the Court lacks subject matter jurisdiction over a defamation claim against the United States, and such claim must be dismissed. *See Dora v. Achey*, 300 F. App'x 550, 551 (9th Cir. 2008).

"[T]he Attorney General's certification is 'the first, but not the final word' on whether the federal officer is immune from suit and correlatively, whether the United States is properly substituted as defendant." *Osborn v. Haley*, 549 U.S. 225, 246 (2007) (quoting *Lamagno*, 515 U.S. at 432). "Certification by the Attorney General is prima facie evidence that a federal employee was acting in the scope of [his or] her employment at the time of the incident and is conclusive unless challenged." *Billings v. United States*, 57 F.3d 797, 800 (9th Cir. 1995). Accordingly, the party challenging the certification "bears the burden of presenting evidence and disproving the Attorney General's certification by a preponderance of the evidence." *Jackson v. Tate*, 648 F.3d 729, 732 (9th Cir. 2011). "The United States . . . must remain the federal defendant in the action unless and until the District Court determines that the employee, in fact, and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of his employment." *Osborn*, 549 U.S. at 231. When a district court is reviewing a certification question, "it must identify and resolve disputed issues of fact necessary to its decision before entering its order." *Arthur v. United States*, 45 F.3d 292, 296 (9th Cir. 1995). The Court may do so by reviewing "specific documentary proof provided by the parties." *Pelletier v. Fed. Home Loan Bank*

*of S.F.*, 968 F.2d 865, 874 (9th Cir. 1992); *see also Jenkins v. Univ. of Minn.*, 50 F. Supp. 3d 1084, 1097 (D. Minn. 2014) ("[W]here a certification has been filed the Court should proceed almost as if the motion for substitution was one for summary judgment, requiring the plaintiff to come forward with evidence to rebut the prima facie evidence of scope of employment provided by the certification."). The district court is permitted to hold evidentiary hearings if necessary, *Arthur*, 45 F.3d at 296, but federal courts have held that "the party challenging the certification must provide 'something more than conclusory abstractions' in order to obtain such a hearing," *Murrietta v. Banner Health Sys.*, No. CV-06-371-PHX-DGC, 2006 WL 1663236, at *2 (D. Ariz. June 9, 2006) (citing *Day v. Mass. Air Nat'l Guard*, 167 F.3d 678, 686 (1st Cir. 1999)). In order to rebut the scope certification and obtain discovery, "a plaintiff must 'allege sufficient facts that, taken as true, would establish that the defendant's actions exceeded the scope of his employment.'" *Saleh v. Bush*, 848 F.3d 880, 889 (9th Cir. 2017) (quoting *Wuterich v. Murtha*, 562 F.3d 375, 381 (D.C. Cir. 2009)).

The question of whether a federal employee is acting within the course and scope of his employment is determined by applying respondeat superior principles of the state in which the alleged tort occurred. *Green v. Hall*, 8 F.3d 695, 698–99 (9th Cir. 1993). In cases where the United States is substituted for an employee that is also a tribal employee, "[t]he tribal employee must also be deemed to have acted as a federal employee in carrying out the allegedly tortious activity." *Wilson v. Horton's Towing*, 906 F.3d 773, 781 (9th Cir. 2018), *cert. denied*, (2019 WL 825553, Apr. 22, 2019). The Ninth Circuit recently articulated that the test found in *Shirk v. U.S. ex rel. Dep't of Interior*, 773 F.3d 999 (9th Cir. 2014), also applied to challenges to Attorney General Certifications. *Wilson*, 906 F.3d at 781. The *Wilson* court found that the test had two parts. First, the district court looks at whether the language of the federal contract encompassed "the activity that the plaintiff ascribes to the employee." *Id.* (quoting *Shirk*, 773 F.3d at 1007). Second, the court looks at whether the employee's activity fell within the scope of employment as defined by state law. *Id.* In Arizona, "[t]he conduct of a servant is within the scope of employment if it is

of the kind the employee is employed to perform, it occurs substantially within the authorized time and space limit, and it is actuated at least in part by a purpose to serve the master." *Smith v. Am. Express Travel Related Servs. Co., Inc.*, 876 P.2d 1166, 1170 (Ariz. Ct. App. 1994). An employer is liable for its employee's conduct if at the time of injury, the employee "was performing a service in furtherance of [the] employer's business." *Id.* at 1171 (citing *Ohio Farmers Ins. Co. v. Norman*, 594 P.2d 1026, 1028 (Ariz. Ct. App. 1979)). "Conduct within the scope of employment may be either of the same nature as that authorized or incidental to that authorized." *Arizona v. Schallock*, 941 P.2d 1275, 1282 (Ariz. 1997). "Under Arizona law, intentional torts, including defamation, may fall within the scope of employment." *Dora v. Achey*, 300 F. App'x 550, 551 (9th Cir. 2008) (citing *Phoenix Newspapers, Inc. v. Church*, 537 P.2d 1345, 1359 (Ariz. Ct. App. 1975)).

### B. *Analysis*

As to the first prong of the *Shirk* test—whether the language of the federal contract encompassed the activity that the plaintiff ascribes to the employee—Plaintiff only raises this issue in his Response to the Motion to Dismiss. (Doc. 21). Plaintiff's argument is somewhat circular, alleging that the statements were not made in the scope of employment, and thus cannot be "carrying out the contract or agreement." (Doc. 21 at 12). Plaintiff contends that there were "no allegations that the defamatory statements were made as part of the medical process or carrying out the medical duties." (Doc. 21 at 12).

The Scope Certification states that the Individual Defendants "were covered persons acting within the scope of their deemed federal employment as employees of the Indian Health Service in *carrying out functions authorized under the Self-Governance Compact with TCRHCC* at the time of the incidents giving rise to suit." (Doc. 4-1 at 3) (emphasis added). The United States asserts that under the Self-Governance Compact, TCRHCC is permitted "to run the day-to-day operations of its facilities, including the administration of programs services functions and activities [PSFAs] of the Indian Health Services," and that the allegations relate to the Individual Defendants "alerting hospital management of alleged 'kickbacks' and 'fraud'[.]" (Doc. 12 at 4–5, Exhibit D). Plaintiff asserts that he never

alleged that the defamatory comments were related to the Individual Defendants "informing management," and that the allegations were that the comments "were made to outside individuals and entities which had nothing to do with carrying out the contractual requirements." (Doc. 21 at 5, 12). In the FAC, Plaintiff alleges that the Individual Defendants acted outside the scope of their employment, but does not specifically state how the allegations were not related to functions of the hospital. It is the Plaintiff's burden to provide evidence that disproves the Scope Certification, and Plaintiff has not shown that the Individual Defendants were not acting pursuant to the Self-Governance Compact.

As to the second prong of the *Shirk* test—whether the employee's activity fell within the scope of employment—Plaintiff argues that the Individual Defendants were not acting in the scope of their employment. Plaintiff argues that "there was no legitimate work activity when the Defendants off the work site and in social settings made statements about Plaintiff being dangerous and taking kick-backs." (Doc. 16 at 9–10). Plaintiff further asserts that he "has no intention [of] proceeding on statements made at the hospital, during an investigation or doing evaluations," and that "the facts Plaintiff has alleged occurred from people defaming Plaintiff in a social setting unrelated to their job duties." (Doc. 16 at 10). Plaintiff's sole support for these assertions is that he has alleged in the FAC that defamatory statements were not made within the scope of employment, and that the United Stated has provided no facts as a basis for the substitution. (Doc. 16 at 7). Taken as true, Plaintiff's allegations do not establish that the defendant's actions exceeded the scope of his employment. As an initial matter, the Court notes that all of the statements Plaintiff alleges were made about him concerned his employment as a physician—that he was receiving kickbacks from referring entities; was a dangerous physician; committed fraud; was a "bad element" at the hospital; was seeing too many patients; and was not practicing in the scope of his licensing. (Doc. 1-2 at 183–88). Nothing inherent in these statements leads to the conclusion that they were made outside of the scope of the Individual Defendants' employment. The individuals allegedly making the statements include the hospital CEO, a physician assistant, and other physicians, including the medical director

of surgical services, chief of family medicine, chief of surgery, and chief of pediatrics. (Doc. 12-2 at 58–79). Statements made concerning the actions of another doctor could easily be encompassed within their job duties. And nowhere in the FAC does Plaintiff specifically allege that the statements were made in "social settings." Additionally, the allegations are conclusory and do not contain factual assertions that support that the alleged harm occurred outside the scope of employment. Specifically, Plaintiff points to the following allegations in the complaint:

> Acting outside the scope of her employment, Lynette Bonar stated that Plaintiff was receiving kickbacks, committed fraud and was a dangerous physician. Defendant acted at least negligently, published a false and defamatory communication concerning Plaintiff that was published to people and impeached Plaintiff's honesty, integrity, or reputation.
>
> Off the Navajo reservation and in Coconino County, Defendant Lynette Bonar stated that Plaintiff was receiving kickbacks, committed fraud and was a dangerous physician.
>
> Defendant Lynette Bonar told Holly Van Dyke, Barbara Peters, Thomas Peters, Julie Maloney, Sandy Beach, Hayden Poulsen, Dr. John Wright and/or upon information and belief, others, that Plaintiff was dangerous/a dangerous doctor, that Plaintiff was getting kick-backs from contracts and/or that she wanted to get rid of the bad elements at the hospital, referring to Plaintiff.
>
> Defendant Bonar told Hayden Poulsen that Dr. Goss was dangerous and seeing too many patients, and was investigating his work in hopes of discovering complications.
>
> Off the Navajo Nation reservation and in Coconino County, Jennifer Whitehair told Sandy Beach, Kathleen Holve and/or possibly others that Plaintiff committed Medicare fraud, was a dangerous physician and received kickbacks from referring entities.

(Doc. 16 at 4–5). The only possible facts alleging that the statements were made outside the scope of employment are (1) that statements were made off the Navajo reservation and in Coconino County and (2) that the statements were made to certain named individuals.

First, merely asserting that statements were made off the hospital premises is not dispositive that the statements were made outside the scope of employment. "An employee's act . . . need not occur within the exact time or space authorized by the employer for it to be within the scope of employment." *Neswood-Gishey v. United States*, No. CV 07-8007-PCT-EHC, 2008 WL 2705380, at *3 (D. Ariz. July 9, 2008); *see also Jansen v. Packaging Corp. of Am.*, 123 F.3d 490, 574 (7th Cir. 1997), *aff'd sub nom. Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) (stating that in a harassment suit, "[i]t may help to consider the authorized time and space limits to define which incidents were work-related, although in today's mobile world they are hardly conclusive"). Second, Plaintiff provides no facts regarding whether the non-parties named are also employees of TCRHCC or whether the non-parties have any connection to TCRHCC. Plaintiff's allegations in the FAC are conclusory.

The United States also notes that while Plaintiff did not submit any evidence with this motion, Plaintiff submitted his own affidavit in connection with his Response to the United States' motion to dismiss. (Doc. 21, Exhibit 1). The United States objects to Plaintiff's affidavit asserting that much of the affidavit contains inadmissible hearsay. (Doc. 22 at 6). Indeed, many of Plaintiff's statements in the affidavit regard the knowledge of certain unidentified individuals in reference to things that the Individual Defendants said. *See, e.g.*, (Doc 21-1 at 1–2) ("I have previously talked to many people about statements made to them by the Defendants; These people told me the statements were not made in the hospital, not made pursuant to any official business and were made in social settings or to private professions in a setting not related to the employment context."); *id.* at 3 ("I was specifically told that Lynette Bonar told others outside of the hospital setting that I was receiving kickbacks, committed fraud and was a dangerous physician."); *id.* at 4 ("I was specifically told that Zane Kelley stated that I was a dangerous physician, committed fraud and received kickbacks from referring entities. . . . I was specifically told that these conversations occurred outside the hospital."); *id.* ("I was specifically told that Steven Holve stated that I received financial kickbacks from referring entities"). As such,

much of the affidavit consists of inadmissible hearsay. S*ee Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors*, 909 P.2d 486, 492 (Ariz. Ct. App. 1995) (affirming that plaintiff's deposition statement was inadmissible hearsay in a defamation action when it regarded what a coworker told her about what another coworker said). In Plaintiff's Reply brief, he did not discuss the United States' hearsay objection, and therefore offered no possible hearsay exceptions. In addition to being hearsay, most of Plaintiff's affidavit statements lack foundation—giving no details on who relayed the information to Plaintiff, when the information was relayed to Plaintiff, and when the information was allegedly said by the Individual Defendants. Plaintiff has provided no more than conclusory, hearsay statements asserting that statements were made outside of the scope of employment. Such allegations are insufficient to rebut the Scope Certification. *See Woolley v. Baeza*, No. CV-18-00138-PHX-JJT, 2018 U.S. Dist. LEXIS 111014, *9–10 (finding Plaintiff's single allegation in the complaint that an accident occurred outside of the employer's location insufficient by itself to succeed on a challenge of the Scope Certification); *Smith v. Leach*, No. CV07-0170-TUC-FJM, 2007 WL 2405668, at *1 (D. Ariz. Aug. 16, 2007) (plaintiff's "unsupported allegation" that defendant was not acting within the scope of his employment did not "rebut the certification").

On the other hand, the United States submitted affidavits from each of the Individual Defendants as part of the United States' Motion to Dismiss, attesting that any statements made concerning Plaintiff were made "within the course and scope of . . . employment at TCRHCC"; that the subject of their statements "to, about, or concerning [Plaintiff] arose solely from the fact that [they] were co-workers under the employment and control of TCRHCC"; and that any statements made "to, about, or concerning [Plaintiff] and which related or could relate to the [FAC] were made solely in furtherance of [their] employment-related dut[ies] of advancing TCRHCC's interests in this regard." (Doc. 12-2 at 58–79). Additionally, these affidavits contained factual details regarding statements made by each of the Individual Defendants as they pertained to Plaintiff. For example, Defendant Ralph Zane Kelley stated that he recalled speaking to the Chief Medical Officer and the Chief of

Surgical Services regarding Plaintiff and concerns of improper referrals and failing to supervise residents. (Doc. 12-2 at 75–76). Defendant Kelley further stated that the only people that he expressed "these concerns to were [t]he Chief Medical Officer, the Chief of Surgical Services, the surgical committee, and an attorney hired by TCRHCC to investigate the matter." *Id.* Defendant Joseph Magee stated that he recalls "having discussions in departmental meetings" with a Department Chair regarding Plaintiff's use of antibiotics and referrals. (*Id.* at 62). Defendant Kathryn Magee stated that she recalls speaking to the Chief Medical Officer regarding Plaintiff's practice of referring patients and prescribing medications. (Doc. 12-2 at 65–66).

Because Plaintiff has only offered conclusory statements regarding the Individual Defendants acting outside the scope of employment, Plaintiff has not met his burden of disproving the Scope Certification by a preponderance of the evidence. And because the allegations in the FAC, even when taken as true, "do not establish that Defendants acted outside the scope of their employment, an evidentiary hearing would be a futile exercise." *Saleh v. Bush*, 848 F.3d 880, 892 (9th Cir. 2017); *see also Wuterich v. Murtha*, 562 F.3d 375, 378 (D.C. Cir. 2009) ("The law is clear that limited discovery is permitted in a Westfall Act case only when a plaintiff alleges sufficient facts that, taken as true, would establish that the defendant's actions exceeded the scope of his employment." (citation and alterations omitted)).

**II.     Motion to Dismiss by the United States**

Now that the Court has determined that the United States is the proper defendant for the Defamation Counts, the Court now considers the United States' motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). (Doc. 12 at 1). Plaintiff filed a Response (Doc. 21) and the United States filed a Reply (Doc. 25). The United States argues that dismissal is warranted because the action is covered under the FTCA, and the government has not waived its sovereign immunity in defamation claims. (Doc. 12 at 2–3). The United States also argues that dismissal is warranted due to (1) Plaintiff's failure to exhaust administrative remedies and (2) the exclusive jurisdiction held by the Navajo

- 11 -

Tribal Court. (Doc. 12 at 10–13).

### A. *Legal Standard*

While the United States has sovereign immunity and cannot be sued without its consent, the FTCA provides consent for certain tort claims brought against the United States. *Rodriguez v. Swartz*, 899 F.3d 719, 739 (9th Cir. 2018). "The FTCA acts as a limited waiver of sovereign immunity for specific types of torts committed by government employees, and is the exclusive remedy for tortious conduct by the United States." *Oliveira v. United States*, No. CV-16-02925-PHX-DLR, 2017 WL 3172865, at *2 (D. Ariz. July 26, 2017). The FTCA, however, excepts libel and slander from the waiver of sovereign immunity. 28 U.S.C. § 2680(h). "When a claim falls within a statutory exception to the FTCA's waiver of sovereign immunity, the court is without subject matter jurisdiction to hear the case." *Mundy v. United States*, 983 F.2d 950, 952 (9th Cir. 1993).

### B. *Analysis*

Here, Plaintiff does not dispute that the Defamation Claims cannot go forward under the FTCA. (Doc. 21 at 4). Rather Plaintiff argues that there are questions as to whether the Individual Defendants are considered federal actors and whether they were acting within the scope of employment. For the reasons stated above, the Court finds that the United States is the proper Defendant. Accordingly, the Defamation Counts must be dismissed, and the Court need not address the United States' additional arguments.

### III. Motion to Dismiss by Individual Defendants

On September 4, 2018, before this action was removed to federal court, the Individual Defendants filed a motion to dismiss the amended complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), lack of personal jurisdiction pursuant to Rule 12(b) (2), and failure to state a claim pursuant to Rule 12(b)(6). (Doc. 32). Plaintiff filed a Response, (Doc. 33), and the Individual Defendants filed a Reply, (Doc. 34). After dismissal of the Defamation Counts, the only counts remaining are Count One and Alternate Count One against Defendant Watabe.

Because the majority of the counts are already dismissed and due to the

developments in this case since the time this motion was originally filed in state court, the Court denies this motion without prejudice. Should Defendant Watabe wish to refile this motion as it regards the remaining counts, he should do so within 30 days from the date of this order.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Strike Substitution by the USA/Scope Certification (Doc. 16) is **DENIED**;

**IT IS FURTHER ORDERED** that the United States' Motion to Dismiss Counts 2 and 4–9 (the "Defamation Counts") of Plaintiff's Amended Complaint (Doc. 12) is **GRANTED**;

**IT IS FURTHER ORDERED** that the Individual Defendants' Motion to Dismiss (Doc. 32) is **DENIED** without prejudice. If Defendant Watabe wishes to refile this motion as it pertains to the remaining counts, he should do so on or before June 16, 2019.

Dated this 15th day of May, 2019.

_____
Honorable Susan M. Brnovich
United States District Judge